UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ANTHONY B.,<br><br>    Plaintiff,<br><br>    v.<br><br>KILOLO KIJAKAZI,<br> ACTING COMMISSIONER OF<br> SOCIAL SECURITY,[1]<br><br>    Defendant. | Case No. 20 CV 2525<br><br>Magistrate Judge McShain |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Anthony B. brings this action for judicial review of the Social Security Administration's (SSA) decision denying his application for benefits. For the following reasons, plaintiff's request to reverse and remand the SSA's decision [15][2] is denied, defendant's motion for summary judgment [18] is granted, and the SSA's decision denying plaintiff's application is affirmed.

## Background

### A.    Procedural Background

In January 2017, plaintiff filed a Title II application for a period of disability and disability insurance benefits, alleging a disability onset of September 15, 2015, based on his degenerative disc disease, sarcoidosis, and obesity. [14-1] 13, 178-79. Plaintiff's claim was denied initially and on reconsideration. [*Id.*] 13. Plaintiff requested a hearing, which was held before an administrative law judge (ALJ) on November 9, 2018. [*Id.*] 30-81. In a decision dated February 13, 2019, the ALJ found that plaintiff was not disabled and denied his application. [*Id.*] 13-25. The Appeals Council denied review on February 20, 2020 [*id.*] 1-6, making the ALJ's decision the agency's final decision. *See* 20 C.F.R. §§ 404.955 & 404.981. Plaintiff timely appealed

---

[1] In accordance with Fed. R. Civ. P. 25(d), Kilolo Kijakazi, the Acting Commissioner of Social Security, is substituted as the defendant in this case in place of the former Commissioner of Social Security, Andrew Saul.

[2] Bracketed numbers refer to entries on the district court docket. Referenced page numbers are taken from the CM/ECF header placed at the top of filings, except for citations to the administrative record [14], which refer to the page numbers in the bottom right corner of each page.

to this Court [1], and the Court has subject-matter jurisdiction to review the Acting Commissioner's decision under 42 U.S.C. § 405(g).[3]

## B. The ALJ's Decision

The ALJ reviewed plaintiff's disability claim in accordance with the SSA's five-step sequential evaluation process. At step one of her decision, the ALJ found that plaintiff had not engaged in substantial gainful employment since his alleged onset date. [14-1] 16. At step two, the ALJ determined that plaintiff's degenerative disc disease and sarcoidosis were non-severe impairments. [*Id.*]. At step three, the ALJ ruled that plaintiff did not have an impairment or combination of impairments that met or equaled the severity of one of the listed impairments. [*Id.*] 16-17. Before turning to step four, the ALJ found that plaintiff has the residual functional capacity (RFC) to perform sedentary work, except that plaintiff (1) could not climb ladders, ropes, or scaffolds; (2) could only occasionally climb ramps and stairs, kneel, crouch, and crawl; (3) could have occasional exposure to humidity, odors, dust, fumes, gases, and other pulmonary irritants; (4) cannot be exposed to heights or hazardous machinery; and (5) should have a sit and stand option where he would need to change positions every thirty minutes or so while remaining on task. [*Id.*] 17-22. At step four, the ALJ determined that plaintiff could not perform his past relevant work. [*Id.*] 23. At step five, the ALJ ruled that significant numbers of jobs existed in the national economy that plaintiff could perform: charge account clerk (66,065 jobs), assembler (23,491 jobs), and order clerk, food and beverage (63,095 jobs).

## Legal Standard

Under the Social Security Act, disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

To determine whether a claimant is disabled, the ALJ conducts a sequential five-step inquiry: (1) whether the claimant is unemployed; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the claimant's impairment meets or equals any listed impairments; (4) whether the claimant is unable to perform her past relevant work; and (5) whether the claimant is unable to perform any other available work in light of her age, education, and work experience. *See* 20 C.F.R. §§ 404.1520(a)(4) & 416.920(a). "An affirmative answer leads either to the next step, or, on Steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than Step 3, ends the inquiry and leads to a

---

[3] The parties have consented to the exercise of jurisdiction in this case by a United States Magistrate Judge. [7].

determination that a claimant is not disabled." *Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000).

The Court reviews the ALJ's decision deferentially to determine if it is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "not a high threshold: it means only 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Karr v. Saul*, 989 F.3d 508, 511 (7th Cir. 2021) (quoting *Biestek v. Berryhill*, 139 S. Ct. 1148, 1152 (2019)). But the standard "is not entirely uncritical. Where the Commissioner's decision lacks evidentiary support or is so poorly articulated as to prevent meaningful review, the case must be remanded." *Brett D. v. Saul*, No. 19 C 8352, 2021 WL 2660753, at *1 (N.D. Ill. June 29, 2021) (internal quotation marks and citation omitted).

## Discussion

Plaintiff argues that the ALJ's decision should be reversed for three reasons. First, plaintiff contends that the ALJ erred by refusing to admit into the record a pain report from one of his treating doctors because it was not submitted at least five business days before the hearing. [15] 8-10. Second, plaintiff argues that the ALJ's subjective symptom analysis was patently erroneous. [*Id.*] 10-13. Third, plaintiff argues that the ALJ did not incorporate all his limitations into the RFC determination. [*Id.*] 13-15.

### A.   The ALJ's Refusal To Consider The Untimely Medical Source Statement Was Not Error.

At the start of the November 9, 2018 hearing before the ALJ, plaintiff's attorney advised the ALJ that plaintiff had just given him "a pain report from his doctor . . . that we were not expecting." [14-1] 34. Counsel was referring to a "Pain Report" that was completed on November 1, 2018 by Dr. Leon Huddleston, plaintiff's treating pain specialist. *See* [15-1] 1-2. Counsel acknowledged that the pain report had not been included in plaintiff's "five day letter," and the ALJ responded that she was "not going to admit" Dr. Huddleston's statement into evidence because "it wasn't part of the five day letter[.]" [*Id.*] 35. Plaintiff's attorney made no further comment or argument in favor of admitting the report into evidence. In her written decision, the ALJ explained that, if a claimant wishes that written evidence be considered at the hearing, the claimant has an obligation to "submit or inform the [ALJ] about the evidence no later than five business days before the date of the scheduled hearing." [*Id.*] 13. The ALJ also recognized that, under 20 C.F.R. § 404.935, she could consider evidence that was not timely submitted if "some other unusual, unexpected, or unavoidable circumstance beyond the claimant's control prevented the claimant from submitting or informing the [ALJ] about the evidence earlier." [*Id.*]. But the ALJ found that plaintiff had not "actively or diligently sought" the pain report and that

3

none of the exceptions provided by § 404.935(b) had been satisfied and refused to admit the report. The Court finds no error in the ALJ's handling of this issue.

Applicable SSA regulations provide that a claimant "must make every effort to ensure that the [ALJ] receives all of the evidence and must inform [the ALJ] about or submit any written evidence . . . no later than 5 business days before the date of the scheduled hearing." 20 C.F.R. § 404.935(a). "If a claimant fails to comply with the five-business-day deadline, the ALJ 'may decline to consider or obtain the evidence' subject to certain exceptions set forth at § 404.935(b)." *Janisha C. v. Kijakazi*, No. 22-cv-381, 2023 WL 5017943, at *3 (N.D. Ill. Aug. 7, 2023) (quoting 20 C.F.R. § 404.935(a)). Plaintiff relies on the following exception:

> (b) If you have evidence required under § 404.1512 but you have missed the deadline described in paragraph (a) of this section, the administrative law judge will accept the evidence if he or she has not yet issued a decision and you did not inform us about or submit the evidence before the deadline because:
>
> \* \* \*
>
> (3) Some other unusual, unexpected, or unavoidable circumstance beyond your control prevented you from informing us about or submitting the evidence earlier. Examples include, but are not limited to:
>
> \* \* \*
>
> (iv) You actively and diligently sought evidence from a source and the evidence was not received or was received less than 5 business days prior to the hearing.

20 C.F.R. § 404.935(b)(3)(iv).

The Court agrees with the ALJ that plaintiff has not carried his burden to demonstrate that the ALJ should have admitted Dr. Huddleston's report under this exception. *See Odis W. M. v. Saul*, Civil No. 20-311 (DSD/BRT), 2020 WL 8713688, at *3 (D. Minn. Nov. 30, 2020) ("When a plaintiff attempts to submit late evidence, the plaintiff has the burden of proving why one of the exceptions to the five day rule applies."); *Nino v. Berryhill*, No. 3-18-82-CRW-SBJ, 2019 WL 3491929, at *1-2 (S.D. Iowa Apr. 11, 2019) (same).

There is no dispute that plaintiff did not submit or inform the ALJ about Dr. Huddleston's pain report at least five business days before the hearing. As the ALJ observed, plaintiff did not mention this evidence in the "five day letter" he submitted

4

to the ALJ on November 2, 2018, which informed the ALJ about other medical evidence that plaintiff was attempting to obtain but had yet to receive. *See* [14-1] 428. Rather, the report was first mentioned at the start of the hearing and thus was untimely. Moreover, there is essentially no evidence in the record that would have permitted–let alone required–the ALJ to find that plaintiff had "actively and diligently sought to obtain" Dr. Huddleston's pain report, but received it fewer than five business days before the hearing.[4] Indeed, plaintiff (who was represented by counsel at the hearing) made no effort to explain the circumstances surrounding his receipt of the pain report: he did not tell the ALJ when he first requested the statement, he did not explain why (or whether) the statement could not have been received sooner, and he did not explain why it was being offered only moments before the hearing began. These are critical–and inexplicable–omissions, given that Dr. Huddleston had treated plaintiff since August 3, 2015 and was thus an obvious source of evidence to support plaintiff's disability claim.

Plaintiff's arguments to the contrary lack merit. Plaintiff contends that the ALJ never inquired why Dr. Huddleston's report was not submitted in a timely fashion. [15] 9. But the ALJ's written decision itself, which focused on plaintiff's failure to mention the evidence in the "five day letter" and addressed whether plaintiff had "actively and diligently" sought the evidence, refutes this argument. *See* [14-1] 13. In any event, it was not the ALJ's duty to determine whether there was any conceivable basis on which to admit Dr. Huddleston's report and only then exclude it from the record. Instead, it was plaintiff's burden to demonstrate that the untimely evidence should have been admitted under § 404.935(b)(3)(iv) or another exception, but plaintiff has not met his burden to do so. This observation also disposes of plaintiff's argument, *see* [15] 9, that the ALJ's duty to develop a full and fair record required her to explore in more detail plaintiff's reasons for failing to timely submit or inform the ALJ of Dr. Huddleston's report. Finally, plaintiff suggests that the ALJ should have admitted the report because it was presented at the hearing itself and any delay in submitting it was essentially harmless. But nothing in § 404.935(b) carves out an exception to the five-business-day rule for evidence that is proffered at the hearing itself or where the ALJ finds the delay to be harmless.

For these reasons, the Court finds that the ALJ did not err in excluding Dr. Huddleston's pain report from the record.

---

[4] It appears that courts reviewing an ALJ's decision to admit or exclude evidence under § 404.935(b) apply an abuse-of-discretion standard. *See, e.g.*, *Janisha C.*, 2023 WL 5107943, at *3 ("If this Court were in the ALJ's position, it may well have exercised its discretion . . . and considered [untimely] evidence," but "[h]ow this Court might have exercised discretion is immaterial"); *Haight v. Comm'r of Soc. Sec.*, No. 22-1364, 2023 WL 3467042, at *1 (6th Cir. Jan. 18, 2023) (reviewing ALJ's exclusion of evidence for abuse of discretion). The Court need not definitively decide which standard of review applies because, even under the standard most favorable to plaintiff–de novo review–the Court agrees with the ALJ that there was no basis to find that the report was admissible under § 404.935(b)(3)(iv).

**B. The ALJ's Subjective Symptom Analysis Was Not Patently Erroneous.**

Plaintiff argues that the ALJ erred in evaluating whether his subjective allegations about the severity of the limitations caused by his impairments were not credible. [15] 10-12. More specifically, plaintiff maintains that the ALJ erred by concluding that (1) plaintiff's allegations were not fully supported by the objective record; (2) plaintiff's allegations about his back pain were not corroborated by objective evidence; and (3) there was no support for plaintiff's allegations regarding the disabling symptoms he experienced due to sarcoidosis.

"When assessing a claimant's subjective symptom allegations, an ALJ must consider several factors, including the objective medical evidence, the claimant's daily activities, his level of pain or symptoms, aggravating factors, medication, course of treatment, and functional limitations." *Charles B. v. Saul*, Case No. 19 C 1980, 2020 WL 6134986, at *6 (N.D. Ill. Oct. 19, 2020). "[T]he ALJ must explain her subjective symptom evaluation in such a way that allows the Court to determine whether she reached her decision in a rational manner, logically based on her specific findings and the evidence in the record." *Id.* (internal quotation marks and brackets omitted). "The Court will overturn an ALJ's evaluation of a claimant's subjective symptom allegations only if it is patently wrong." *Id.* (internal quotation marks omitted). "[F]laws in the ALJ's reasoning are not enough to undermine the ALJ's decision that [plaintiff] was exaggerating her symptoms. Not all of the ALJ's reasons must be valid as long as *enough* of them are." *Halsell v. Astrue*, 357 F. App'x 717, 722 (7th Cir. 2009) (emphasis in original).

The ALJ concluded that plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record[.]" [14-1] 18. In support, the ALJ found that (1) plaintiff's allegations were not fully supported by the objective record"; (2) plaintiff had "only conservative treatment" after undergoing a laminotomy, partial facetectomy, foraminotomoy, and discectomy in December 2015; (3) plaintiff "often reported the medication he was taking was helping" or that his "pain was resolved"; and (4) plaintiff was able to perform certain activities of daily living (ADLs). [*Id.*] 21-22.

**1. Consistency With Objective Evidence**

Plaintiff argues that the ALJ's decision on this score was patently erroneous because the ALJ "cherry-picked" the evidence that was unfavorable to plaintiff's disability claim and ignored the evidence that was consistent with his allegations. [15] 11. Plaintiff also contends that the ALJ erred by insisting that objective evidence corroborate his allegations of severe pain. [*Id.*] 12. Finally, plaintiff maintains that the ALJ misunderstood the nature of, and the disabling limitations caused by, his

6

sarcoidosis. [*Id.*] 12-13. Having reviewed the ALJ's decision as a whole and the evidence on which it rests, *see Winsted v. Berryhill*, 923 F.3d 472, 478 (7th Cir. 2019) ("The court applies a common-sense reading to the entirety of an ALJ's decision."), the Court finds that the ALJ's subjective symptom analysis had a substantial evidentiary basis and was not patently erroneous.

First, "the ALJ was entitled to, and did, consider the extent to which [plaintiff's] allegations were consistent with the objective medical evidence." *Denise E. v. Kijakazi*, No. 21 C 1211, 2023 WL 3792261, at *5 (N.D. Ill. Jun. 2, 2023). The ALJ recounted in adequate detail the objective medical evidence that, in her view, was inconsistent with plaintiff's allegations of disabling back pain. She first observed that an MRI taken in December 2016, one year after plaintiff's back surgery, "showed no evidence of a recurrent L4-5 disc herniation and no neural foraminal narrowing or spinal stenosis." [14-1] 21 (citing [*id.*] 393-94). Rather, the MRI showed only "[m]ild L5-S1 degenerative disc disease with a small annular tear." [*Id.*] 394. The ALJ also relied on a report from plaintiff's September 8, 2017 visit with his primary care physician, Dr. Prem Rupani. [14-1] 20. As the ALJ noted, while plaintiff complained of "numbness in extremity" and back pain at this time, Dr. Rupani's physical exam "failed to document any abnormalities with the claimant's musculoskeletal or neurological system." [*Id.*] (citing [*id.*] 423). The ALJ was entitled to consider these "mild" and "normal" findings in concluding that plaintiff's pain symptoms were not as severe as alleged. *Denise E.*, 2023 WL 3792261, at *5. And while plaintiff accuses the ALJ of cherry-picking the evidence to reach a preordained result, plaintiff notably fails to cite any objective medical evidence favorable to his case that the ALJ failed to discuss. *See* [15] 11. Plaintiff points only to a March 17, 2016 exam report indicating that "he has decreased rotation due to pain" and gross motor strength of "4+/5" [14-1] 404, and a finding from the April 2017 consultative exam that plaintiff had decreased flexion in the lumbar spine, [*id.*] 373. But the ALJ discussed both reports and the specific parts of the reports that plaintiff emphasizes. *See* [*id.*] 19 (discussing March 17, 2016 exam with Dr. Huddleston); [*id.*] 20 (discussing April 19, 2017 consultative exam). Furthermore, the ALJ never suggested that plaintiff's allegations had *no* basis in *any* objective evidence. To the contrary, the ALJ agreed that plaintiff "has diagnostic evidence to support his lumbar degenerative disc disease," and she accepted that plaintiff's severe impairments caused him to experience "pain" and other limitations. [14-1] 21. The ALJ merely concluded that, because the objective signs and indicators associated with plaintiff's back impairment were relatively mild, she could not credit plaintiff's allegations regarding the severity of the back pain he experienced.

Nor is there merit to plaintiff's argument that the ALJ insisted that plaintiff's complaints about pain be corroborated by objective evidence, or that she rejected his complaints as incredible solely because they were not supported by objective evidence. As the Seventh Circuit has explained, "a lack of objective support from physical examinations and test results is relevant" in assessing a claimant's allegations of

7

disabling pain, "but an ALJ may not discredit pain complaints solely because they lack objective corroboration." *Lambert v. Berryhill*, 896 F.3d 768, 778 (7th Cir. 2018). Nowhere in the ALJ's decision in this case did the ALJ insist that plaintiff provide objective evidence corroborating his claim to be in disabling pain, nor did she discount the allegations solely because they were not completely supported by objective. Rather, as the remainder of the ALJ's subjective symptom analysis makes clear, this was but one factor that the ALJ considered in assessing the credibility of plaintiff's allegations.

### 2. Conservative Nature Of Treatment

Second, "[a]n ALJ is permitted to consider routine and conservative treatment in assessing the severity of a claimant's subjective symptoms." *Angela G. v. Berryhill*, No. 1:17-cv-1788-JRS-DLP, 2019 WL 1055096, at *5 (S.D. Ind. Mar. 6, 2019). Here, the ALJ determined that, after undergoing surgery in December 2015, plaintiff "only had conservative treatment" to address his back pain. [14-1] 21. Reasonable minds might debate the accuracy of that conclusion as it related to the pain caused by plaintiff's degenerative disc disease: the record shows that plaintiff took many medications, including prescription pain-killers, and received at least one epidural injection to treat his back pain. But the ALJ's conclusion was not unreasonable in the sense that (1) plaintiff did not undergo (and was not recommended to undergo) additional surgeries, and (2) the record did not reflect that plaintiff was receiving lumbar injections on a regular or recurring basis after his December 2015 surgery. In any event, whether to characterize the course of plaintiff's treatment as conservative or in some other fashion, and the weight to be given to that course of treatment, were decisions for the ALJ to make, and this Court has no authority to second-guess them. *See Spring W. v. Saul*, Case No. 20 C 1864, 2021 WL 2529615, at *2 (N.D. Ill. Jun. 21, 2021) ("In reviewing an ALJ's decision, the Court may not reweigh the evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ.") (internal quotation marks and brackets omitted).

### 3. Efficacy Of Pain Medications

Third, the ALJ was entitled to consider "[t]he type, dosage, effectiveness, and side effects of any medication [plaintiff has] taken to alleviate [his] pain or other symptoms." SSR 16-3p, 2017 WL 5180304, at *8 (Oct. 25, 2017); *see also* 20 C.F.R. § 416.929(c)(3). Here, substantial evidence in the record supported the ALJ's determination that plaintiff's medications helped with and occasionally resolved his pain. [14-1] 22. In December 2016, for example, plaintiff told Dr. Huddleston that Lyrica "helps with joint pain" and that, after he had begun taking Lyrica, his pain was "tolerable." [*Id.*] 401-02. At a March 27, 2017 appointment with his primary care doctor, plaintiff denied experiencing pain even though he was not taking pain medication at that time. [*Id.*] 415. In May 2017, plaintiff reported to Dr. Huddleston that "Lyrica helps with the pain during the day" and that he was "also taking Motrin

8

800 mg, which helps." [*Id.*] 400. And, as the ALJ also observed, plaintiff reported to Dr. Martin Luken, the neurologist who performed his back surgery, that he "still takes an occasional dose of hydrocodone and cyclobenzaprine for some residual lower back aching, with some 'tightness' of his right calf," but he was "vastly more comfortable than he was before surgery." [*Id.*] 342. In this case, "the ALJ properly considered the effectiveness of medication [plaintiff] has taken to alleviate [his] symptoms." *Amanda L.S. v. Kijakazi*, Case No. 21 C 5775, 2023 WL 2711663, at *5 (N.D. Ill. Mar. 30, 2023).

### 4. Symptoms Of Sarcoidosis

"Sarcoidosis is the growth of tiny collections of inflammatory cells in different parts of the body." *Jones v. Colvin*, No. 13 C 3712, 2014 WL 3536803, at *1 n.3 (N.D. Ill. Jul. 15, 2014). "Sarcoidosis may cause fatigue; swollen lymph nodes; lung symptoms such as shortness of breath, coughing, and chest pain; skin rashes or lesions; and eye symptoms including blurred vision, eye pain, redness, and light sensitivity." *Id.*

As plaintiff observes, the ALJ did not credit his allegations about the limitations caused by his sarcoidosis because his "examinations repeatedly indicated lungs were clear to auscultation with no wheezes, rales, or rhonci, and that there were no emergency room visits for shortness of breath." [15] 12. Plaintiff maintains, however, that the ALJ "appears to have been confusing sarcoidosis with asthma, or some similar breathing problems." [*Id.*]. This was error, plaintiff contends, because he was diagnosed with sarcoidosis after experiencing squeezing chest pain and bilateral hand numbness. [*Id.*]. As a result, plaintiff argues that the ALJ improperly "undermin[ed]" his sarcoidosis symptoms and "fail[ed] to consider what effect his symptoms of 'squeezing' chest pain and bilateral hand numbness would have on his ability to function." [*Id.*] 12-13. Plaintiff's argument contradicts his own testimony at the hearing. When the ALJ asked plaintiff how sarcoidosis affected him, plaintiff responded that "[t]he breathing part is – in dusty areas it is getting to be a problem for me." [14-1] 70. Plaintiff also testified that his symptoms had been worse over the recent summer, and that he had been advised that this was due to "[t]he allergens in the air." [*Id.*]. He never testified that sarcoidosis caused him to experience squeezing chest pain or numbness in the hands. Considering plaintiff's own testimony that his sarcoidosis made it difficult for him to breathe, the ALJ did not err by focusing on that testimony and weighing it against other evidence in the record indicating that plaintiff generally had clear lungs, no wheezing, and no indications of difficulty breathing. *See* [*id.*] 20-21.

\* \* \*

Because the ALJ's "evaluation of [plaintiff's] symptom description [was] logically based on specific findings and evidence in the record," the Court finds no

9

patent error warranting a remand. *Joyce C. v. Kijakazi*, No. 19 CV 8514, 2021 WL 4264274, at *8 (N.D. Ill. Sept. 20, 2021).

### C. The ALJ's RFC Determination Accounted For All Of Plaintiff's Limitations.

Plaintiff's final argument is that the ALJ did not account for all his functional limitation when determining his RFC. More specifically, plaintiff contends that the ALJ (1) did not include any limitations resulting from his sarcoidosis; (2) arbitrarily determined that a sit-stand option that allowed plaintiff to change positions every thirty minutes would accommodate his need to get up; (3) failed to consider how his pain would impair his ability to concentrate, persist, and maintain pace; and (4) did not consider how plaintiff's obesity exacerbated his symptoms. [15] 13-15.

A claimant's RFC "is an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities." SSR 96-8p, 1996 WL 374184, at *4 (Jul. 2, 1996). The claimant's RFC "describes the maximum she can do in a work setting despite her mental and physical limitations." *Thomas v. Colvin*, 745 F.3d 802, 807 (7th Cir. 2014). In determining the claimant's RFC, the ALJ must evaluate "the claimant's ability to do physical and mental work activities on a regular and continuing basis despite limitations from her impairments." *Moore v. Colvin*, 743 F.3d 1118, 1121 (7th Cir. 2014). "An ALJ must evaluate all relevant evidence when determining an applicant's RFC[.]" *Arnett v. Astrue*, 676 F.3d 586, 591 (7th Cir. 2012).

#### 1. Sarcoidosis-Related Limitations

Plaintiff faults the ALJ for failing to factor into the RFC determination his "significant chest pain and hand numbness from sarcoidosis." [15] 13. As already discussed, however, plaintiff testified in direct response to the ALJ's question how sarcoidosis affected him that it caused breathing problems, not chest pain or numbness in his hands. *See* [14-1] 70. As part of his application for benefits, moreover, plaintiff completed two function reports that asked him to identify what abilities were affected by his conditions. *See* [*id.*] 221-29 (March 2017 function report); [*id.*] 240-50 (August 2017 function report). In neither report, however, did plaintiff check the box indicating that "Using Hands" was impaired. [*Id.*] 226, 245. Finally, while plaintiff went to the ER in February 2015 with chest pain and hand numbness–which ultimately led to the sarcoidosis diagnosis–plaintiff does not cite any evidence indicating that these symptoms regularly occurred. To the contrary, the ALJ cited and specifically discussed two treatment notes relating to sarcoidosis in which plaintiff denied chest pain. *See* [14-1] 20 (citing [*id.*] 327 (Dr. Luken's December 16, 2015 treatment note reporting that plaintiff "denies any chest pain") and [*id.*] 415

10

(Dr. Rupani's March 17, 2017 treatment note in which plaintiff denied chest pain)). Given plaintiff's own testimony, his failure to indicate on the function reports that sarcoidosis caused numbness in his hands or chest pain, and the treatment notes in which he denied chest pain, the ALJ had a substantial evidentiary basis for not including any limitations relating to chest pain and hand numbness.

### 2. Sit-Stand Option

Plaintiff also contends that the ALJ "failed to explain how she arrived at the seemingly arbitrary finding that Plaintiff would only need a sit/stand option every 30 minutes, and that it would not affect his ability to stay on task." [15] 13. According to plaintiff, "there is no evidence to support the ALJ's conclusion in the RFC of a sit-stand option every 30 minutes." [*Id.*]. This argument has no merit.

"When a claimant's impairments require switching between positions during a workday, '[t]he RFC assessment must be specific as to the frequency of the individual's need to alternate sitting and standing." *Prater v. Saul*, 947 F.3d 479, 481 (7th Cir. 2020) (quoting SSR 96-9p, 1996 WL 374185, at *7 (Jul. 2, 1996)). "[I]f the sit-stand option is supported by substantial evidence, there is no error." *Terry W. v. Kijakazi*, No. 1:21-cv-98-SEB-DML, 2022 WL 6256831, at *8 (S.D. Ind. Jul. 14, 2022).

Plaintiff testified that he could stand comfortably for ten to fifteen minutes and sit comfortably for about twenty minutes before needing to get up and walk around. [14-1] 61-62. As discussed above, however, the ALJ did not fully credit plaintiff's allegations about the severity of his lumbar degenerative disc disease and the back pain it caused. [14-1] 18-22. That finding had a substantial evidentiary basis in the record because, *inter alia*, plaintiff's allegations were not fully consistent with the objective evidence and were in tension with plaintiff's consistent reports that medications helped alleviate his pain. In addition, there was no opinion evidence–whether from plaintiff's treaters or from the consultative examiner–that plaintiff could not sit or stand for thirty minutes at a time. To the contrary, the consultative examiner observed in April 2017 that plaintiff could sit and stand (though the examiner did not specify how long plaintiff could do so), *see* [14-1] 372, and the ALJ gave this opinion great weight because it was "based on [the examiner's] own exam findings of a normal gait, sensation, and strength" and because the examiner was "familiar with Social Security rules and regulations." [*Id.*] 22. At the same time, the ALJ made clear that she believed plaintiff's degenerative disc disease caused pain, but that this and plaintiff's other symptoms could be accommodated by restricting plaintiff to sedentary work; limiting his exposure to heights and the frequency with which he would need to climb stairs, crouch, and stoop; and allowing him to change positions every thirty minutes. Given her adverse credibility determination, the ALJ could reasonably have found that plaintiff could sit and stand for longer periods of time than plaintiff alleged, and that the thirty-minute sit-stand option would account for plaintiff's difficulties sitting and standing. Because the Court can trace the path

11

of the ALJ's reasoning, the Court rejects plaintiff's argument that the sit-stand option is arbitrary or lacks a substantial basis in the evidence. *Cf. Charles M. v. Comm'r of Soc. Sec.*, Case No. 19-cv-1178-JES-JEH, 2021 WL 779979, at *4 (C.D. Ill. Mar. 1, 2021) (rejecting plaintiff's argument that ALJ failed to explain why thirty-minute sit-stand option accounted for his pain, fatigue, and drowsiness because "the ALJ supported his sit/stand conclusion with substantial evidence the Court can readily trace").

As for plaintiff's ability to remain on task while utilizing the sit-stand option, the vocational expert (VE) testified that the three sedentary jobs that plaintiff could perform allowed for an off-task time of up to ten percent of the day. [14-1] 74. As the VE explained, this would afford plaintiff up to "six minutes every hour probably to sit and move around and stand and move around," and these jobs "can still be performed." [*Id.*] 74-75. The ALJ credited this testimony, to which plaintiff did not object. *See* [*id.*] Accordingly, the VE's testimony constitutes substantial evidence for the ALJ's implicit but necessary determination that plaintiff could perform the three sedentary jobs at issue even while utilizing a sit-stand option.

### 3. Limitations In Concentration, Persistence, And Maintaining Pace

The ALJ's RFC finding "must incorporate the totality of a claimant's limitations, including any deficiencies of concentration, persistence and pace." *Mischler v. Berryhill*, 766 F. App'x 369, 375 (7th Cir. 2019) (internal quotation marks omitted). Here, however, plaintiff cites to no evidence in the record to support his claim that his back pain limits his ability to concentrate, persist, or maintain pace. *See* [15] 14. Rather, plaintiff's argument depends entirely on the untimely pain report from Dr. Huddleston that the ALJ properly excluded. [*Id.*]. Given the lack of evidence on this issue, the ALJ did not err by omitting from the RFC determination a limitation related to plaintiff's ability to concentrate, persist, and maintain pace.

### 4. Exacerbating Effects Of Obesity

"[O]besity is no longer a standalone disabling impairment," but "the ALJ must still consider its impact when evaluating the severity of other impairments." *Stephens v. Berryhill*, 888 F.3d 323, 328 (7th Cir. 2018). "This is because the combined effects of obesity with other impairments may be greater than might be expected without obesity." *Tanitria C. v. Saul*, No. 19 CV 1884, 2021 WL 1577795, at *8 (N.D. Ill. Apr. 22, 2021) (internal quotation marks omitted).

The ALJ found that plaintiff's obesity was a non-severe impairment because it "does not cause more than a minimal limitation on the claimant's ability to perform basic work activity, neither alone nor in combination with any of the claimant's severe impairments." [14-1] 20. Plaintiff argues that the ALJ "failed to even factor in any

12

exacerbating effects from his obesity." [15] 14. The Court agrees with plaintiff that, after the ALJ determined at step two that plaintiff's obesity was non-severe, she did not discuss his obesity again. However, plaintiff does not cite any evidence that suggests, nor did he testify at the hearing, that his obesity exacerbated the effects of his degenerative disc disease or sarcoidosis. *See* [15] 14-15. "[A]n ALJ's failure to explicitly consider an applicant's obesity is harmless if the applicant did not explain how her obesity hampers her ability to work." *Stepp v. Colvin*, 795 F.3d 711, 720 (7th Cir. 2015) (internal quotation marks omitted). Furthermore, applicable regulations prohibited the ALJ from "mak[ing] assumptions about the severity or functional effects of obesity combined with other impairments," given that "[o]besity in combination with another impairment may or may not increase the severity or functional limitations of the other impairment." SSR 02-1p, 2002 WL 34686281, at *6 (Sept. 12, 2002). Here, plaintiff had "the burden of providing evidence of h[is] obesity's impact on [his] RFC . . . but [he] failed to do so." *Craig v. Colvin*, No. 13 C 8380, 2017 WL 621757, at *2 (N.D. Ill. Feb. 15, 2017). Even if the ALJ erred by failing to further explain her determination that plaintiff's obesity did not exacerbate the limitations imposed by his severe impairments, that error was harmless because there is essentially no evidence that plaintiff's obesity had such an exacerbating effect. *See Stepp*, 795 F.3d at 720; *Craig*, 2017 WL 621757, at *2; *see also Charles M.*, 2021 WL 779979, at *4-5 ("The Court agrees with the Magistrate Judge that any error in expressly discussing Plaintiff's obesity was a harmless error" because "Plaintiff did not explain how obesity would have impacted his highly restrictive RFC of sedentary work that had additional limitations.").

## Conclusion

For the reasons set forth above, plaintiff's request to reverse and remand the SSA's decision [15] is denied, defendant's motion for summary judgment [18] is granted, and the SSA's decision denying plaintiff's application is affirmed.

*[signature: Heather K. McShain]*

**HEATHER K. McSHAIN**
**United States Magistrate Judge**

**DATE: November 2, 2023**